No. 2024-____

# In the
# United States Court of Appeals
# for the Federal Circuit

IN RE FUTABA CORPORATION OF AMERICA

*Petitioner,*

_____

On Petition for a Writ of Mandamus to the
United States District Court for the Western District of Texas
in Case No. 6:23-cv-00440-ADA,
the Honorable Alan D. Albright Presiding.

## PETITION FOR A WRIT OF MANDAMUS

George S. Fish
Young Basile Hanlon & MacFarlane, P.C.
3001 W. Big Beaver Rd., Ste. 624
Troy, MI 48084
(248) 649-3333

John Demarco
Young Basile Hanlon & MacFarlane, P.C.
700 Milam St., Ste. 1300
Houston, TX 77002
(832) 871-5058

*Counsel for Futaba Corporation of America*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In Re Futaba Corporation of America |
| **Filing Party/Entity** | Futaba Corporation of America |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/30/2024

Signature:  /s/ George S. Fish

Name:  George S. Fish

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Futaba Corporation of America | | Futaba Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

ii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Young Basile Hanlon & MacFarlane, P.C. | John Demarco | |
| Young Basile Hanlon & MacFarlane, P.C. | George S. Fish | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☑ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Certificate of Interest ............................................................................... i

INTRODUCTION ........................................................................................ 1

RELIEF SOUGHT ....................................................................................... 2

ISSUES PRESENTED ................................................................................. 2

JURISDICTIONAL STATEMENT ............................................................. 3

STATEMENT OF FACTS ........................................................................... 3

  A. Background on Parties, Patents, Copyright, and Claims ................. 3

  B. Background of Related Prior Litigations ........................................... 6

  C. Procedural Background of this Litigation ......................................... 8

REASONS WHY THE WRIT SHOULD ISSUE ..................................... 11

I.  Venue and Jurisdiction Requirements Have Not been Met and
    Require this Court to Issue a Writ ................................................... 12

  A. Venue is not Proper for Nartron's Patent Claims in the Western
      District of Texas .............................................................................. 12

    1. FCA does not reside in the Western District of Texas ................. 13

    2. FCA has not Committed Acts of Infringement in the Western
       District of Texas ............................................................................ 14

  B. Venue is not Proper for Nartron's Copyright Claim in the Western
      District of Texas .............................................................................. 18

  C. The Western District of Texas Lacks Personal Jurisdiction ........... 19

    1. FCA is not Subject to General Jurisdiction in the Western District
       of Texas ......................................................................................... 21

    2. FCA is Not Subject to Specific Jurisdiction in the Western District
       of Texas ......................................................................................... 23

    3. FCA is Not Subject to Jurisdiction in the Western District of
       Texas Under a Stream of Commerce Theory ................................ 27

II. At a Minimum, Mandamus Is Proper Because the District Court Has
    Failed To Timely Address the Transfer Motion ............................... 30

iv

CONCLUSION .............................................................................. 34

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*In re Apple*,
  52 F.4th 1360 (Fed. Cir. 2022) ....................................... 11, 31

*In re Apple, Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ................................. 1, 11, 30

*Asahi Metal Industry Co. v. Superior Court of California,*
*Solano County*,
  480 U.S. 102 (1987) ................................................................ 27

*ASM Assembly Sys. Switz. GmbH v. QTS Eng'g*,
  No. 15CV714 BEN (RBB), 2016 U.S. Dist. LEXIS 7720
  (S.D. Cal. 2016) ...................................................................... 29

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009) ........................................... 19

*In re Bd. of Regents of the Univ. of Tex. Sys.*,
  435 Fed. Appx. 945 (Fed. Cir. 2011) ..................................... 2

*Bockman v. First Am. Mktg. Corp.*,
  459 F. App'x 157 (3d Cir. 2012) .................................... 14, 15

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006) ........................................... 20

*Bristol-Myers Squibb Co. v. Superior Court of California,*
*San Francisco Cnty.*,
  582 U.S. 255 (2017) ................................................................ 25

*Celgard, LLC v. SK Innovation Co.*
  792 F.3d 1373 (Fed. Cir. 2015) ...................................... 28, 29

*Cheney v. U.S. Dist. Court for the Dist. of Columbia*,
  542 U.S. 367 (2004) ............................................................... 11

*In re Cray*,
  871 F.3d 1355 (Fed. Cir. 2017) ........................................... 13

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)................................................................ 21, 22, 23

*Deb v. Sirva, Inc.,*
   832 F.3d 800 (7th Cir. 2016).................................................. 14

*Elecs. for Imaging Inc. v. Coyle,*
   340 F.3d 1344 (Fed. Cir. 2003) ............................................ 25

*EMA Electromechanics, Inc. v. Siemens Corp.,*
   No. 6:21-cv-1001-ADA, 2022 U.S. Dist. LEXIS 76297
   (W.D. Tex. Feb. 4, 2022) ................................. 13, 16, 17, 18

*Est. of Myhra v. Royal Caribbean Cruises, Ltd.,*
   695 F.3d 1233 (11th Cir. 2012) ............................................ 14

*Freudensprung v. Offshore Technical Servs., Inc.,*
   379 F.3d 327 (5th Cir. 2004).................................................. 24

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011)................................................... 21, 22, 25

*In re Google,*
   No. 2015-138, 2015 U.S. App. LEXIS 16544 (Fed. Cir.
   July 16, 2015)........................................................... 3, 12, 31

*Grp. One, Ltd. v. Hallmark Cards, Inc.,*
   254 F.3d 1041 (Fed. Cir. 2001) ............................................ 16

*Hanson v. Denckla,*
   357 U.S. 235 (1958).................................................................. 24

*Huffman v. Activision Publ.,*
   No. 4:17-CV-00815, 2020 U.S. Dist. LEXIS 248904 (E.D. Tex.
   Feb. 25, 2020) ........................................................................ 18

*Int'l Shoe Co. v Wash.,*
   326 U.S. 310 (1945)................................................................ 21

*Intirion Corp. v. Coll. Prods.*,
No. 6:22-cv-00459-ADA, 2023 U.S. Dist. LEXIS 63040
(W.D. Tex. Apr.11, 2023) .................................................. 14

*JVIS-USA, LLC, et al. v Nartron Corporation, et al.*,
Case No. 17-3562-CB ....................................................... 7

*Kulko v. Superior Court of Cal., City and County of San
Francisco*,
436 U.S. 84 (1978) ........................................................... 23

*Lone Star Fund V (US) LP v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ............................................ 19

*McIntyre Machinery Ltd. v. Nicastro*,
564 U.S. 873 (2011) ......................................................... 27

*Monkton Ins. Servs. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) ............................................ 22

*In re Nintendo Co.*,
544 F. App'x ........................................................... 30, 34

*Nuance Communs., Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010) ................................... 20, 24

*Pierce v. Shorty Small's*,
137 F.3d 1190 (10th Cir. 1998) ........................................ 14

*Religious Tech. Ctr. v. Liebreich*,
339 F.3d 369 (5th Cir. 2003) ............................................ 20

*Silicon Labs., Inc. v. Cresta Tech. Corp.*,
No. A-14-CA-318-SS, 2014 U.S. Dist. LEXIS 95711 (W.D.
Tex. July 14, 2014) .......................................................... 29

*In re SK Hynix Inc.*,
835 Fed. Appx. 600 (Fed. Cir. 2021) ........................ 1, 3, 32, 34

*Target Training Int'l, Ltd. v. Extended Disc Int'l. Oy, Ltd.*,
No. 4:11-cv-02531, 2015 U.S. Dist. LEXIS 182823 (S.D.
Tex. March 4, 2015) ................................................................ 29

*Tayama v. Riom Corp.*,
No. 2:11-CV-167-J, 2012 U.S. Dist. LEXIS 21643 (N.D.
Tex. Feb. 21, 2012) ................................................................. 18

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
581 U.S. 258 (2017) ......................................................... 12, 13

*Time, Inc. v. Manning*,
366 F.2d 690 (5th Cir. 1966) .................................................. 18

*In re TracFone Wireless, Inc.*,
848 Fed. Appx. 899 (Fed. Cir. 2021) ............................... *passim*

*In re TS Tech. United States Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) ............................................... 3

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ......................................................... 23, 24

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018) .............................................. 13

## Statutes

28 U.S.C. §§ 1295, 1331, and 1338(a) ....................................... 3

28 U.S.C. §§ 1391 and 1400 ........................................... *passim*

28 U.S.C. § 1404(a) .................................................................. 31

## Other Authorities

Fed. R. of Civ. P. 12(b) ........................................ 1, 9, 13, 19

Fed. R. Civ. P. 34 .................................................................. 15

## INTRODUCTION

Petitioner Futaba Corporation of America ("FCA") petitions this Court to issue a writ of mandamus to the United States District Court for the Western District of Texas ("WDTX") to dismiss this case. The case involves only patent and copyright infringement claims. Over eight months ago, FCA filed motions to dismiss for improper venue per Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §1400(a) and (b), and lack of personal jurisdiction per Fed. R. of Civ. P. 12(b)(2). Those motions remain pending. Meanwhile, the district court has promptly issued orders advancing the case, including an order compelling FCA to participate in voluminous merits-based, fact discovery and orders denying FCA's motions for a stay and relief from discovery.

This Court prioritizes addressing threshold issues, such as motions based on improper venue: "once a party files a transfer motion, disposing of that motion should unquestionably take priority." *In re Apple, Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020); *see, In re SK Hynix Inc.,* 835 Fed. Appx. 600 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.,* 848 Fed. Appx. 899 (Fed. Cir. 2021). Further, personal jurisdiction is one of the "threshold grounds for denying audience to a case on the

merits" that a court must address first. *In re Bd. of Regents of the Univ. of Tex. Sys.,* 435 Fed. Appx. 945, 946 (Fed. Cir. 2011) (quoting, *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,* 549 U.S. 422, 423 (2007). While district courts have some degree of "discretion as to how to handle their dockets," *id.,* the district court's delay here has surpassed what should be permissible.

The record evidence overwhelmingly shows venue is improper and personal jurisdiction is lacking. Therefore, this Court should issue a writ of mandamus compelling WDTX to dismiss this case or, at a minimum, compelling the district court to stay the case, including substantive discovery and claim construction, until after such time it decides the pending motions to dismiss.

## RELIEF SOUGHT

FCA respectfully requests a writ of mandamus compelling the district court to dismiss this case or, in the alternative, staying the case pending rulings on FCA's motions to dismiss.

## ISSUES PRESENTED

Whether the district court abused its discretion by failing to rule on motions to dismiss for improper venue and lack of personal

jurisdiction filed over eight months ago.

Whether a stay should be granted until the district court decides FCA's pending motions to dismiss for improper venue and lack of personal jurisdiction, which have been pending for over eight months.

## JURISDICTIONAL STATEMENT

The Federal Circuit has jurisdiction over this petition because the underlying case in WDTX is a patent case. *See* 28 U.S.C. §§ 1295, 1331, and 1338(a). Mandamus is available "to correct a clear abuse of discretion or usurpation of judicial power." *In re TS Tech. United States Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008). As this Court has previously ruled, failure to timely rule on a motion to transfer warrants mandamus. *In re TracFone, supra; In re SK Hynix; supra; In re Google*, No. 2015-138, 2015 U.S. App. LEXIS 16544 at *1 (Fed. Cir. July 16, 2015).

## STATEMENT OF FACTS

### A. Background on Parties, Patents, Copyright, and Claims

Plaintiff UUSI, LLC d/b/a Nartron ("Nartron") and Defendant are contract manufacturers of printed circuit board assemblies ("PCBAs") for instrument panel bezels of automobiles. APPX0021. They are

headquartered in, respectively, Michigan and Illinois. APPX0022. A third party in Michigan, JVIS – USA, LLC ("JVIS"), contracted with FCA in 2013 to make PCBAs for JVIS exclusively and to JVIS's specifications. APPX0021. FCA made the PCBAs in Alabama and sold them to JVIS in Michigan. APPX0119-0120, APPX0116.

In the underlying action, Nartron accuses FCA of copying PCBAs made by Nartron, and making and selling them from 2013 to the present, thereby infringing U.S. Patent Nos. 9,538,589 ("'589 Patent") (APPX0057), 9,840,185 ("'185 Patent") (APPX0071), and 10,220,762 ("'762 Patent") (APPX0086) (collectively, "Patents"). See, e.g., APPX0029, APPX0037, APPX0046. The Patents are part of the same family, were applied for by Nartron in 2014, and began issuing in 2017. APPX0024.

Nartron also accuses FCA of copying the software object code for Nartron's PCBAs in 2013, thereby infringing Nartron's copyright on the software source code therefor, *i.e.*, *Printed Circuit Board Software Code*, Registration No. TX 9-263-201. APPX0027-0028, APPX0101. Nartron applied for the copyright on May 15, 2023. APPX0101.

Nartron vaguely alleged venue is proper in WDTX. However, FCA did not make, use, sell, offer to sell, or import any of the PCBAs or a

component thereof, or induce or contribute to any such act in WDTX. APPX0205.

Nartron alleged personal jurisdiction over FCA based on "a place of business at 26B Walter Jones Blvd, El Paso, Texas." APPX0023. However, this is a "Distribution Center" that merely inspects and transships products having nothing to do with this litigation. APPX0116. Further, FCA only leases the Distribution Center and employs just six individuals there. APPX0209.

The district court permitted Nartron to pursue discovery to try to prove Nartron's venue and jurisdiction allegations. In a 30(b)(6) deposition, FCA's representative Larry Brown reviewed FCA's list of Texas commercial customers for the last five (5) years and confirmed that FCA did not sell any of the accused PCBAs to any Texas commercial customer in the list. APPX0206. Brown also reviewed the purchases of individuals listed in the Texas Consumer Customer List covering Texas customers during the preceding five (5) years. *Id.*. FCA did not sell any of the accused PCBAs to any individual listed in the Texas Consumer Customer List, instead selling only unrelated servos, remote control devices and accessories thereto. *Id.* While FCA's website solicits business

nationwide, it does not advertise the PCBAs at issue; it does not state a sales price for the PCBAs or any other PCBA, and purchases cannot be made through the website. APPX0207. Brown also testified that FCA was unaware where the PCBAs at issue went after sale to FCA's customer. APPX0211-0212.

### B. Background of Related Prior Litigations

Nartron, FCA, and JVIS have already litigated many issues related to the underlying case in prior litigations. In or around 2011, JVIS engaged Nartron to produce PCBAs to integrate into JVIS's instrument panel bezels. APPX0021 (¶7). JVIS grew dissatisfied with Nartron's work and began to pursue other suppliers. APPX0217. In 2012-2013, JVIS terminated the contract with Nartron and engaged FCA to make the PCBAs. APPX0026 (¶36), APPX0027 (¶41), APPX0217. Nartron claimed FCA copied Nartron's work to make FCA's PCBAs. APPX0027 (¶41).

On or around July 9, 2013, JVIS instituted litigation against Nartron in the State of Michigan in the Circuit Court for the County of Macomb, Case No. 13-2742-CK (Hon. Kathryn A. Viviano) alleging that Nartron failed to perform its obligations under the parties' agreement. APPX0026 (¶36). On or around November 11, 2013, Nartron filed a

counter and third-party complaint naming FCA as a third-party defendant, alleging misappropriation of Nartron's trade secrets based on alleged copying of Nartron's PCBAs and other claims. *Id.* The parties agreed to arbitrate rather than litigate the case. APPX0124, APPX0217. On September 22, 2017, JVIS initiated *JVIS-USA, LLC, et al. v Nartron Corporation, et al.*, Case No. 17-3562-CB (Hon. Kathryn A. Viviano) to confirm the award in the arbitration. APPX0124, APPX0217. Neither the Michigan Circuit Court cases nor the arbitration resulted in any finding of misappropriation of any purported Nartron trade secret. APPX0124, APPX0217. Further, the rights to designs and software of the PCBAs were decided in favor of FCA and JVIS. APPX0124, APPX0217. The two prior Michigan Circuit Court cases and intervening arbitration are collectively referred to as the "Prior Litigations." Also relevant, Nartron learned through at least the deposition of FCA's then President, Mr. Masaharu Tomita on December 14, 2015, that FCA had committed no acts in WDTX with respect to FCA's PCBAs. APPX0187. Despite this knowledge, Nartron chose to file the underlying litigation in WDTX as recompense from FCA for losing the JVIS contract to FCA in 2013. APPX0027 (¶41), APPX0177-0178.

In a Case Readiness Status Report in the underlying litigation, FCA, notified the district court that it intended to file motions to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim on the grounds that Nartron's (i) claims were barred by claim and/or issue preclusion by the Prior Litigations and (ii) copyright claim was barred by the statute of limitation. APPX0124. The claims may also be precluded by JVIS's contract with Nartron. *See* APPX0217. FCA contends the rights to the patented designs and copyrighted software at issue in this case were already litigated, arbitrated, and adjudged in favor of FCA and JVIS from July 8, 2013, to November 20, 2017, in the Prior Litigations. APPX0124. FCA has been waiting for resolution of its pending motions to dismiss before undertaking the investigation, time, and expense required for the additional motions.

### C. Procedural Background of this Litigation

Eleven years after learning of FCA's alleged unlawful acts, Nartron filed the underlying action on June 9, 2023, claiming only copyright infringement against FCA. APPX0011-0018. Nartron amended its complaint on July 14, 2023, now alleging infringement of the Patents and copyright infringement. APPX0020-0055. In response, FCA filed motions

to dismiss for improper venue pursuant to Fed. R. Civ. 12(b)(3) and 28 U.S.C. § 1400(a) and (b) and lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) on September 14, 2023. APPX0102-0113, APPX0115-0116.

On September 27, 2023, Nartron moved for leave to file a second amended complaint seeking to add Futaba Corporation, a Japanese company with its principal place of business in Japan. APPX0128. Nartron alleged that as a foreign entity, Futaba Corporation could be sued in any federal district court and thereby attempted to establish jurisdiction and venue as to FCA in WDTX. APPX0136. This motion has been pending for eight months.

The district court issued its original Scheduling Order on October 23, 2023, setting the *Markman* hearing for March 14, 2024, and the opening of fact discovery for March 15, 2024. Due to scheduling conflicts and year end holidays, the Parties filed a joint motion to amend the Scheduling Order resulting in the *Markman* hearing being adjourned to April 11, 2024, but on Nartron's insistence, retaining the March 15, 2024, start of fact discovery. APPX0190-0191, APPX0257.

On March 13, 2024, FCA filed a motion to stay all proceedings until the district court decided FCA's pending motions to dismiss for lack of personal jurisdiction and for improper venue. APPX0244-0254. Additionally, consistent with the district court's Exemplary Schedule in its Standing Order Governing Proceedings, OGP 4.4 (Appendix, p.vi), FCA requested that discovery be stayed until one day after the *Markman* hearing. APPX0253. FCA argued that with Nartron's threadbare assertions of personal jurisdiction and venue, it would best not to waste any more of the parties' and Court's resources while the dispositive motions are pending. APPX0245. Meanwhile, Nartron would suffer no prejudice since (i) it waited six years to assert its patent claims and ten years to file its copyright claim and (ii) FCA and Nartron are not current competitors. APPX0245, APPX0257-0258.

After rescheduling the *Markman* hearing to April 10, 2024, just two days before the scheduled hearing, the district court moved the date again, this time to May 22, 2024. APPX0262.

With Nartron having served voluminous discovery on FCA on March 29, 2024, FCA filed a motion for protective order seeking relief from the obligation of responding to discovery until at least 21 days after

the rulings on FCA's motions to dismiss. APPX0263-0268. The district court denied both FCA's motion to stay proceedings (APPX0269) and motion for protective order (APPX0271) on May 13, 2024. On the same day, the district court ordered FCA to respond to the pending discovery within 30 days while postponing the *Markman* hearing a second time] to Monday, July 15th because its "schedule remains busy." APPX0273.

## REASONS WHY THE WRIT SHOULD ISSUE

Generally, three conditions must be satisfied for a writ to issue: (1) the petitioner must demonstrate "a clear and indisputable right" to issuance of the writ; (2) the petitioner must have "no other adequate method" to obtain the desired relief; and (3) the writ must be "appropriate under the circumstances." *In re Apple, Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020); *see also Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 381 (2004). In the context of this case, the first factor is key, as an erroneous decision denying FCA's motions to dismiss cannot be remedied in a future appeal resulting in "irreparable procedural injury." *In re Apple* at 1336. This Court has ruled that district courts must prioritize the resolution of threshold motions, and failure to do so in a timely fashion warrants mandamus relief. *In re Apple,* 52 F.4th 1360,

1361 (Fed. Cir. 2022); *In re Google*, 2015 U.S. App. LEXIS 16544 at *1.

Issuing a writ of mandamus is appropriate here because: i) venue is improper in WDTX; ii) the district court lacks personal jurisdiction over FCA; and iii) the district court's delays in addressing the motions to dismiss. Therefore, FCA respectfully requests that this Court issue a writ compelling the district court to dismiss the matter or, in the alternative, stay the matter pending the motions to dismiss.

## I.    Venue and Jurisdiction Requirements Have Not been Met and Require this Court to Issue a Writ

FCA filed motions to dismiss for improper venue and lack of personal jurisdiction over eight months ago. As explained below, those motions should be granted, and the underlying litigation dismissed.

### A.    Venue is not Proper for Nartron's Patent Claims in the Western District of Texas

Section 1400(b) of Title 28 of the U.S.C. is the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258, 266 (2017) (citation and quotation marks omitted). It provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28

U.S.C. § 1400(b). In matters unique to patent law, Federal Circuit law—rather than the law of the regional circuit—applies. *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Whether venue is proper under § 1400(b) is such an issue, so Federal Circuit law governs the substantive questions. *Id.*; *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018).

When the defendant challenges venue in a patent case, "the Plaintiff bears the burden of establishing proper venue." *Id.* at 1013. "Plaintiff may carry its burden by establishing facts that, if taken to be true, establish proper venue." *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-cv-1001-ADA, 2022 U.S. Dist. LEXIS 76297, at *9 (W.D. Tex. Feb. 4, 2022). While a court must accept as true all allegations in the complaint in a Rule 12(b)(3) motion to dismiss, "the Court may look beyond the complaint to evidence submitted by the parties." *Id.* (quoting *Ambraco Inc. v. Bossclip B V*, 570 F.3d 233, 237-38 (5th Cir. 2009).

### 1. FCA does not reside in the Western District of Texas

Section 1400(b) provides a first avenue for establishing venue "where the defendant resides." 28 U.S.C. § 1400(b). "[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland,* 581 U.S. at 262. Here, Nartron has

not alleged FCA resides or is incorporated in Texas. APPX0023 (¶18) (alleging merely "Defendants may be *found* in this district" (emphasis added)). Regardless, FCA is incorporated in Alabama. APPX0115 (¶4). Thus, venue based on residence is improper in this District.

## 2. FCA has not Committed Acts of Infringement in the Western District of Texas

Section 1400(b) provides a second avenue for establishing venue "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A plaintiff may allege acts of infringement to try to establish venue, but a court need not accept them "as true where the defendant offers a contradictory affidavit or evidence." *Intirion Corp. v. Coll. Prods.*, No. 6:22-cv-00459-ADA, 2023 U.S. Dist. LEXIS 63040, at *7 (W.D. Tex. Apr.11, 2023). This is consistent with the trend among circuit courts to accept well-pleaded facts "only to the extent that such facts are uncontroverted by [a] defendant's affidavit." *Pierce v. Shorty Small's*, 137 F.3d 1190, 1192 (10th Cir. 1998); *Deb v. Sirva, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (a court may look to a defendant's contradictory evidence outside the pleadings); *Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012); *Bockman v. First Am. Mktg. Corp.*, 459 F.

App'x 157, 158 n.1 (3d Cir. 2012).

Nartron alleged "[v]enue is proper in the Western District of Texas because Defendants may be found in this district…[and] Defendants have committed acts of patent infringement in this district." APPX0023 (¶18). Specifically, Nartron premised its entire basis for venue (and jurisdiction) on the allegation that "Futaba conducts PCBA prototype design and engineering, test engineering, box assembly, and PCBA assembly from its El Paso [Distribution Center] facility." *Id.* (¶19). However, FCA's Senior Quality Assurance Engineer at the Distribution Center, Ricardo Moreno, attested that the Distribution Center does not conduct any of the listed services. APPX0116 (¶8). Rather, the Distribution Center's activities consist of visually inspecting and transshipping electronics parts other than accused PCBAs. *Id.* (¶9) Further, Moreno declared "Futaba does not make, use, sell, offer to sell, or import into the U.S. the PCBAs in, at, through or out of the Distribution Center." *Id.* (¶7). Nartron deposed Moreno and inspected the facility pursuant to Fed. R. Civ. P. 34 and identified no evidence to controvert his declaration or to establish that FCA committed acts of infringement in WDTX.

FCA's webpage advertising likewise does not support any acts of infringement in WDTX. FCA's webpages have not offered the PCBAs for sale as they have not identified the PCBAs at issue or offered any price therefor. *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-cv-1001-ADA, 2022 U.S. Dist. LEXIS 76297, *21 (W.D. Tex. Feb. 4, 2022) (finding improper venue where "no indication that [ ] advertisements contemplate a price term"); *see, Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) ("contract law traditionally recognizes that mere advertising and promoting of a product may be nothing more than an invitation for offers"). Further Nartron admits that JVIS, a third party in Michigan, contracted with FCA to exclusively make and sell the accused PCBAs for and to JVIS. APPX0021 (¶¶ 7, 9), APPX0025-0027 (¶¶ 30, 33, 35, 41), APPX0030-0031 (¶55a), APPX0033-0034 (¶58).

Nartron did not allege any other acts constituting infringement <u>in WDTX</u>, only insufficient non-specific allegations of, e.g., "making, selling, offering for sale, using, and/or importing in the United States," induc[ing] infringement…by selling the [PCBAs] to United States customers," and "contribut[ing] to infringement…by making, selling, and distributing the [PCBAs] in the United States, where the [PCBAs] constitute a material

part of the claimed invention…." See, e.g., APPX0029 (¶53), APPX0034 (¶63), APPX0036 (¶72).

Even if Nartron had alleged any other act of infringement in WDTX, after over two months of discovery on the subject, Nartron was unable to produce any evidence FCA committed infringing acts in WDTX. Moreover, evidence produced by FCA rebuts all Nartron's conclusory allegations on venue, thus Nartron is unable to satisfy its burden of establishing proper venue.

Moreover, Nartron's indirect patent infringement claims under the '185 Patent and '762 Patent should be dismissed for failure to plausibly allege or show FCA knew of the patents. *See EMA* at *12 ("[t]o state a claim for indirect…infringement, the complaint must allege that the accused infringer has knowledge of the patent"). Nartron alleges FCA has "been aware of the Patents-in-Suit since at least 2017, when the existence of the '185 Patent [and '762 Patent] was mentioned in testimony of the Prior Litigation." APPX0044 (¶98), APPX0052 (¶128). The "Prior Litigation," i.e., JVIS v. Nartron 13-2742-CK (County of Macomb, Michigan) was pending from July 9, 2013, to Nov. 28, 2017. APPX0205-0206 (¶7). FCA could not have been made aware of the '185 and '172

Patents then because they issued Dec. 12, 2017, and March 5, 2019, respectively. *Id*. Because Nartron has not alleged or shown FCA committed acts of patent infringement in this District or even knew of the '185 and '172 Patents, the patent claims against FCA should be dismissed. *EMA* at *22

### B. Venue is not Proper for Nartron's Copyright Claim in the Western District of Texas

Venue for copyright infringement actions is controlled by 28 U.S.C. § 1400(a). It recites that a copyright infringement action "may be filed in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The term "may be found" means where a party is subject to personal jurisdiction. *Time, Inc. v. Manning*, 366 F.2d 690, 697-698 (5th Cir. 1966). *Huffman v. Activision Publ.*, No. 4:17-CV-00815, 2020 U.S. Dist. LEXIS 248904 *14-15 (E.D. Tex. Feb. 25, 2020). "A corporation 'may be found' in a district where personal jurisdiction over a [d]efendant could be maintained. However, there must be specific contacts with that specific district, not merely a specific state." *Tayama v. Riom Corp.*, No. 2:11-CV-167-J, 2012 U.S. Dist. LEXIS 21643 at *4-5 (N.D. Tex. Feb. 21, 2012).

Nartron failed to allege any basis that venue is proper for its copyright claim. Instead, it alleged "[v]enue is proper…under 28 U.S.C. §§ 1391 and 1400(b)…". APPX0023 (¶18). These statutes are for general and patent litigation venue. Even if it alleged a basis for venue, venue for its copyright claim is improper because FCA is not subject to personal jurisdiction in the WDTX as explained below. Therefore, Nartron's copyright claim should be dismissed for failure to allege or show proper venue.

### C.    The Western District of Texas Lacks Personal Jurisdiction

A court must dismiss an action when it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). In analyzing personal jurisdiction, a court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US) LP v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010). For cases brought under the patent laws, the court applies Federal Circuit law to determine personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1016 (Fed. Cir. 2009).

A court engages in two inquiries in determining whether jurisdiction exists over an out-of-state defendant: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). Because the Texas long-arm statute has been interpreted to extend to the limit of due process, the two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich,* 339 F.3d 369, 373 (5th Cir. 2003). "The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum state.'" *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230-1231 (Fed. Cir. 2010) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). From this touchstone of "minimum contacts," courts have recognized two categories of personal jurisdiction, specific and general.

Specific jurisdiction may be asserted where a "corporation's in-state activity is 'continuous and systematic' and *that activity gave rise*

*to the episode-in-suit.*" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (*quoting Int'l Shoe Co. v Wash.*, 326 U.S. 310, 317 (1945). Even "the commission of certain 'single or occasional acts' in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though *not with respect to matters unrelated to the forum connections.*" *Id.* (quoting *Int'l Shoe at* 318) (emphasis added). General jurisdiction is when a corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe* at 318. FCA is subject to neither general nor specific jurisdiction.

### 1. FCA is not Subject to General Jurisdiction in the Western District of Texas

General jurisdiction over out-of-state corporations may be found "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear,* at 919 (*quoting Int'l Shoe,* at 317). The "place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) (internal quotation and

correction omitted). "Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts are 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 138-139 (quoting *Goodyear,* 564 U.S. at 919). Those "affiliations with the State" are the place of incorporation and the principal place of business. *Daimler,* at 137, 139.

The general jurisdiction inquiry does not focus solely on the extent of a corporation's contacts within a state. "A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler,* at 140 n.20. As the Fifth Circuit observed in the wake of *Goodyear* and *Daimler*: "[i]t is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs. v. Ritter,* 768 F.3d 429, 432 (5th Cir. 2014).

Nartron alleged only that "Defendants' contacts with the State of Texas are systematic and continuous so as to render Defendants essentially at home in Texas." APPX0023 (¶19),. Nartron admits the

22

other Defendants, Does 1-10, "are unknown to Nartron at this time" (APPX0022 (¶14)) and therefore their activity cannot form the basis for making that allegation. Moreover, FCA does not have "systematic and continuous" contacts with Texas rendering it "at home" in Texas. FCA is an Alabama corporation (APPX0115 (¶4)), and its principal place of business is in Illinois (APPX0119 ). Thus, its "systematic and continuous contacts" or "home" would be with or in Alabama and/or Illinois, not Texas. *See Daimler,* at 138, 140 n.20. Merely doing business in Texas does not establish general jurisdiction in Texas. *See Daimler,* at 140 n.20. As such, Nartron has not satisfied its burden of establishing general personal jurisdiction over FCA.

### 2. FCA is Not Subject to Specific Jurisdiction in the Western District of Texas

In determining whether specific personal jurisdiction is present, a court must consider "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice." *Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U.S. 84, 92 (1978). However, the "primary concern" for a court to consider is "the burden on the defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). When evaluating that burden, restrictions on

personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Hanson v. Denckla*, 357 U.S. 235, 251 (1958). One State's power to exercise its authority to try cases in its courts is necessarily limited by that same power of other States. *World-Wide Volkswagen*, 444 U.S. at 293. In fact, this interest may deprive a court of jurisdiction when it otherwise seems proper. "[E]ven if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen,* at 294.

Courts apply a three-prong test to determine whether specific jurisdiction exists over a defendant: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Communs,* at 1231. The focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[R]andom," "fortuitous," or "attenuated" contacts do not satisfy the minimum contacts requirement. *Id.* at 475 *(quoting, Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984). Further, the plaintiff has the burden to show minimum contacts exist under the first two prongs. *Elecs. for Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

For a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. *at* 919 (internal quotes omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. *See id.* at 930-931 n.6 ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"). Ultimately, "a defendant's … continuous activity of some sorts within a state...is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.,* 582 U.S. 255, 264 (2017) (internal quotes omitted).

To try to establish specific personal jurisdiction here, Nartron alleged the following:

> Futaba [] has a place of business [in] El Paso, Texas. At that location, Futaba (a) regularly transact [sic] and conduct [sic] business within the State of Texas and (b) have [sic] otherwise made or established contacts with the state of Texas sufficient to permit the exercise of personal jurisdiction. In particular, *Futaba conducts PCBA prototype design and engineering, test engineering, box assembly, and PCBA assembly from its El Paso facility*.

APPX0023 (¶19) (emphasis added). The first sentence is true: FCA has a Distribution Center in El Paso, Texas. The second is generic and insufficient to establish jurisdiction in Texas. The third is inaccurate. The El Paso facility is merely a "Distribution Center" that does not conduct any of the listed services. APPX0115-0116 (¶¶ 2, 8). The Distribution Center's activities are limited to visually inspecting and transshipping electronics parts other than accused PCBAs and "Futaba does not make, use, sell, offer to sell, or import into the U.S. the PCBAs in, at, through or out of the Distribution Center" APPX0016 (¶¶ 7-9),. With FCA's limited activities in Texas having no connection to this underlying dispute, specific jurisdiction is not present.

### 3. FCA is Not Subject to Jurisdiction in the Western District of Texas Under a Stream of Commerce Theory

In its opposition to FCA's motion to dismiss for lack of personal jurisdiction, Nartron argued that FCA is subject to specific personal jurisdiction under a stream of commerce theory. However, Nartron pled only a single paragraph to support its assertion that the district court had personal jurisdiction over FCA, and that paragraph makes no mention of a stream of commerce theory. APPX0023. Further, Nartron has failed to allege any facts to support jurisdiction under that theory. For that reason alone, this Court should reject the stream of commerce theory as a basis for jurisdiction.

Beyond that, the requirements for establishing jurisdiction under a stream of commerce theory have long been unresolved. The Court in *Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102 (1987), was split on whether mere placement in the stream of commerce is sufficient to establish jurisdiction, or whether intent that the products reach the forum in question is required, with four justices finding for each requirement. Later, a plurality of the Court in *McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873 (2011) held there was no jurisdiction over the defendant under a stream of commerce theory

because the defendant had not purposefully availed himself of the forum state's laws. With no binding precedent, this Circuit has declined to take a position on the requirements of a stream of commerce jurisdictional test because the resolution of the cases before it did not require it. *Celgard, LLC v. SK Innovation Co.* 792 F.3d 1373, 1382 (Fed. Cir. 2015).

In *Celgard*, this Court examined a contract manufacturer's role in the stream of commerce and found jurisdiction lacking. *Id.* Plaintiff argued the district court had personal jurisdiction over defendant under the stream of commerce theory because: 1) "it sells separators [the allegedly infringing product] to other companies, with established distribution channels, that incorporate the infringing separators into CE devices that are sold in North Carolina [the forum state];" 2) plaintiff's tests "show that separators have been found in batteries in CE devices purchased in North Carolina that are consistent" with defendant's separators; and 3) defendant's "biggest customers provide a portion of batteries to Apple and Dell" which sell their products in North Carolina. *Id.* at 1380-1381 (internal quote omitted). This Court found jurisdiction lacking because the "record evidence shows only that [defendant] sells its products to OEMs who then sell completed batteries to [consumer

electronics] manufacturers that resell them in the United States." *Id.*

Additionally, various district courts have issued well-reasoned opinions finding jurisdiction lacking under a stream of commerce theory where component part manufacturers have their goods incorporated into products sold nationally.

> [Plaintiff's] theory rests on the idea [defendant], by selling a component part to a manufacturer like Hauppauge, which in turn sells finished products in major international retail stores, can fairly foresee being hailed into federal court in Texas. The logic of such a theory would subject [defendant] to personal jurisdiction in all 50 states by virtue of Hauppauge's conduct. If the Due Process Clause is to be reduced to nothing, …it will not be by this Court.

*Silicon Labs., Inc. v. Cresta Tech. Corp.*, No. A-14-CA-318-SS, 2014 U.S. Dist. LEXIS 95711, *7-8 (W.D. Tex. July 14, 2014). That court cautioned against the stream of commerce theory becoming a single "interconnected ocean water" and found the assertion of jurisdiction would not be fair. S*ilicon Labs.* at *9.[1]

---

[1] *See also, ASM Assembly Sys. Switz. GmbH v. QTS Eng'g,* No. 15CV714 BEN (RBB), 2016 U.S. Dist. LEXIS 7720, *6 (S.D. Cal. 2016) ("California, has no interest in adjudicating a dispute between two foreign corporations that have no connection to California and a Massachusetts corporation that has no connection to California"); *Target Training Int'l, Ltd. v. Extended Disc Int'l. Oy, Ltd.,* No. 4:11-cv-02531, 2015 U.S. Dist. LEXIS 182823 *29 (S.D. Tex. March 4, 2015) ("Texas has little interest in adjudicating the suit between TTI and EDI, since neither is a Texas company, and there is no evidence that EDI's allegedly infringing

FCA sold the PCBAs at issue to JVIS in Michigan. APPX0116 (¶10). JVIS incorporated those PCBAs into instrument bezels and sold them to a customer which assembled them into vehicles that it sold to dealers. APPX0200. Third-party acts two steps down the supply chain do not create jurisdiction over FCA when it has not directed any act related to the claimed infringement to Texas and when FCA's scarce activity in Texas has nothing to do with this matter.

## II. At a Minimum, Mandamus Is Proper Because the District Court Has Failed To Timely Address the Transfer Motion

At a minimum, mandamus is warranted to compel the district court to address FCA's motions to dismiss. The Court has emphasized that a district court should prioritize and resolve threshold motions before it addresses other substantive issues in a case. *In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) ("once a party files a transfer motion, disposing of that motion should unquestionably take top priority.") (applying Fifth Circuit law); *In re Nintendo Co.*, 544 F. App'x at 941 ("a trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case") (applying Fifth

---

activities occurred in Texas…[and] there is no showing that Texas has any particular interest in this lawsuit.")

Circuit law).

Without issuance of a writ, prejudice can occur as "a lengthy delay in ruling on a request for relief can amount to a denial of the right to have that request meaningfully considered." *In re Google, Inc.*, 2015 U.S. App. LEXIS 16544, at *2. The Court has explained "that lengthy delays in resolving transfer motions can frustrate the intent of 28 U.S.C. § 1404(a) by forcing defendants 'to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket.'" *In re TracFone Wireless, Inc.* 848 Fed. Appx. 899, 900 (Fed. Cir. 2021) (quoting *In re Google, Inc.* at *2). Further, undue delay in addressing threshold motions, "may unnecessarily require the expenditure of judicial resources in both the transferor and transferee courts." *In re Apple Inc.*, 52 F.4th 1360, 1362 (Fed. Cir. 2022).

As such, in *Google*, the Court granted mandamus where a district court had let a transfer motion linger for eight months and where Google "made a compelling case" that the trial court "arbitrarily refused to consider the merits of its transfer motion." *In re Google* at *2. Similarly, the *TracFone* Court concluded "that a trial court's failure to act on a fully briefed transfer motion that had been pending for approximately eight

months while pressing forward with discovery and claim construction issues amounted to an arbitrary refusal to consider the merits of the transfer motion." *In re TracFone* at 900. Likewise, the Court found "the lengthy delay and upcoming Markman hearing" necessitated granting mandamus such that "the district court must stay all proceedings concerning the substantive issues of the case and all discovery until such time that it has issued a ruling on the motion capable of providing meaningful appellate review of the reasons for its decision." *In re SK Hynix, Inc.,* 835 Fed. Appx. 600, 601 (Fed. Cir. 2021).

The Court's precedent is clear and compels granting mandamus. FCA filed its motions to dismiss on September 14, 2023. With the motions fully briefed and no indication of a hearing or decision date, on March 13, 2024, FCA filed its motion to stay proceedings until the motions to dismiss were decided or, at a minimum, to stay discovery until one day after the April 11, 2024, *Markman* hearing. FCA argued the adjournment of the start of fact discovery would be consistent with the court's Exemplary Schedule in its Standing Order Governing Proceedings, OGP 4.4 which starts fact discovery after the *Markman* hearing. APPX0216. Moreover, any prejudice to Nartron was negligible in light of its ten-year

delay in filing the underlying action and the fact the parties were no longer competitors. *Id*. Since then, the district court has, *sua sponte*, postponed the *Markman* hearing twice, first to May 22, 2024, and second to July 15, 2024. Meanwhile, Nartron served voluminous discovery on March 29, 2024. Seeking relief from the obligation to respond to the discovery, FCA filed a motion for protective order on April 18, 2024. APPX0234. The district court denied both FCA's motion to stay proceedings (APPX0240) and motion for protective order (APPX0242) on May 13, 2024, while also ordering FCA to respond to the pending discovery within 30 days. In doing so, the district court explained that its, "schedule remains very busy." APPX0244.

FCA's motions to dismiss have been pending for over eight months during which time FCA has been burdened with numerous discovery issues and requests, and has been marched through claim construction. With cursory orders, the district court granted Nartron's request to compel additional discovery on the motions to dismiss, denied FCA's request to compel claim construction discovery, granted Nartron's request to compel merits-based fact discovery, and now denied FCA's motions for relief from the expedited pace of the district court's

33

scheduling order. The scheduling order even forced the Parties to serve their respective Final Infringement and Invalidity Contentions despite not having a claim construction ruling. APPX0195. The district court's extreme delay and its "continued refusal" to heed the instruction to resolve threshold motions to dismiss before proceeding to other substantive aspects of the case warrant the sort of "supervisory" intervention that justifies the writ of mandamus. *See In re Nintendo Co.*, 544 F. App'x at 936; *In re TracFone* at 900. Thus, mandamus is warranted, and the Court should, at a minimum, order the district court to stay discovery and all proceedings concerning the substantive issues of the case until it has ruled on FCA's motions to dismiss. *In re SK Hynix* at 601.

## CONCLUSION

For the foregoing reasons, the Court should issue a writ of mandamus requiring the district court to grant FCA's motion to dismiss. Alternatively, the Court should issue a writ of mandamus staying this case and requiring the district court to rule on FCA's motions within 30 days.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and the Rules of this Court, because it contains 6,967 words (as determined by the Microsoft Word word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word word-processing system in 14-point Century Schoolbook font.

**INTRODUCTION**

Petitioner Futaba Corporation of America ("FCA") petitions this Court to issue a writ of mandamus to the United States District Court for the Western District of Texas ("WDTX") to dismiss this case. The case involves only patent and copyright infringement claims. Over eight months ago, FCA filed motions to dismiss for improper venue per Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §1400(a) and (b), and lack of personal jurisdiction per Fed. R. of Civ. P. 12(b)(2). Those motions remain pending. Meanwhile, the district court has promptly issued orders advancing the case, including an order compelling FCA to participate in voluminous merits-based, fact discovery and orders denying FCA's motions for a stay and relief from discovery.

This Court prioritizes addressing threshold issues, such as motions based on improper venue: "once a party files a transfer motion, disposing of that motion should unquestionably take priority." *In re Apple, Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020); *see, In re SK Hynix Inc.,* 835 Fed. Appx. 600 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.,* 848 Fed. Appx. 899 (Fed. Cir. 2021). Further, personal jurisdiction is one of the "threshold grounds for denying audience to a case on the

merits" that a court must address first. *In re Bd. of Regents of the Univ. of Tex. Sys.,* 435 Fed. Appx. 945, 946 (Fed. Cir. 2011) (quoting, *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 423 (2007). While district courts have some degree of "discretion as to how to handle their dockets," *id.*, the district court's delay here has surpassed what should be permissible.

The record evidence overwhelmingly shows venue is improper and personal jurisdiction is lacking. Therefore, this Court should issue a writ of mandamus compelling WDTX to dismiss this case or, at a minimum, compelling the district court to stay the case, including substantive discovery and claim construction, until after such time it decides the pending motions to dismiss.

## RELIEF SOUGHT

FCA respectfully requests a writ of mandamus compelling the district court to dismiss this case or, in the alternative, staying the case pending rulings on FCA's motions to dismiss.

## ISSUES PRESENTED

Whether the district court abused its discretion by failing to rule on motions to dismiss for improper venue and lack of personal

jurisdiction filed over eight months ago.

Whether a stay should be granted until the district court decides FCA's pending motions to dismiss for improper venue and lack of personal jurisdiction, which have been pending for over eight months.

## JURISDICTIONAL STATEMENT

The Federal Circuit has jurisdiction over this petition because the underlying case in WDTX is a patent case. *See* 28 U.S.C. §§ 1295, 1331, and 1338(a). Mandamus is available "to correct a clear abuse of discretion or usurpation of judicial power." *In re TS Tech. United States Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008). As this Court has previously ruled, failure to timely rule on a motion to transfer warrants mandamus. *In re TracFone, supra; In re SK Hynix; supra; In re Google*, No. 2015-138, 2015 U.S. App. LEXIS 16544 at *1 (Fed. Cir. July 16, 2015).

## STATEMENT OF FACTS

### A. Background on Parties, Patents, Copyright, and Claims

Plaintiff UUSI, LLC d/b/a Nartron ("Nartron") and Defendant are contract manufacturers of printed circuit board assemblies ("PCBAs") for instrument panel bezels of automobiles. APPX0021. They are

headquartered in, respectively, Michigan and Illinois. APPX0022. A third party in Michigan, JVIS – USA, LLC ("JVIS"), contracted with FCA in 2013 to make PCBAs for JVIS exclusively and to JVIS's specifications. APPX0021. FCA made the PCBAs in Alabama and sold them to JVIS in Michigan. APPX0119-0120, APPX0116.

In the underlying action, Nartron accuses FCA of copying PCBAs made by Nartron, and making and selling them from 2013 to the present, thereby infringing U.S. Patent Nos. 9,538,589 ("'589 Patent") (APPX0057), 9,840,185 ("'185 Patent") (APPX0071), and 10,220,762 ("'762 Patent") (APPX0086) (collectively, "Patents"). See, e.g., APPX0029, APPX0037, APPX0046. The Patents are part of the same family, were applied for by Nartron in 2014, and began issuing in 2017. APPX0024.

Nartron also accuses FCA of copying the software object code for Nartron's PCBAs in 2013, thereby infringing Nartron's copyright on the software source code therefor, i.e., Printed Circuit Board Software Code, Registration No. TX 9-263-201. APPX0027-0028, APPX0101. Nartron applied for the copyright on May 15, 2023. APPX0101.

Nartron vaguely alleged venue is proper in WDTX. However, FCA did not make, use, sell, offer to sell, or import any of the PCBAs or a

component thereof, or induce or contribute to any such act in WDTX. APPX0205.

Nartron alleged personal jurisdiction over FCA based on "a place of business at 26B Walter Jones Blvd, El Paso, Texas." APPX0023. However, this is a "Distribution Center" that merely inspects and transships products having nothing to do with this litigation. APPX0116. Further, FCA only leases the Distribution Center and employs just six individuals there. APPX0209.

The district court permitted Nartron to pursue discovery to try to prove Nartron's venue and jurisdiction allegations. In a 30(b)(6) deposition, FCA's representative Larry Brown reviewed FCA's list of Texas commercial customers for the last five (5) years and confirmed that FCA did not sell any of the accused PCBAs to any Texas commercial customer in the list. APPX0206. Brown also reviewed the purchases of individuals listed in the Texas Consumer Customer List covering Texas customers during the preceding five (5) years. *Id.*. FCA did not sell any of the accused PCBAs to any individual listed in the Texas Consumer Customer List, instead selling only unrelated servos, remote control devices and accessories thereto. *Id*. While FCA's website solicits business

nationwide, it does not advertise the PCBAs at issue; it does not state a sales price for the PCBAs or any other PCBA, and purchases cannot be made through the website. APPX0207. Brown also testified that FCA was unaware where the PCBAs at issue went after sale to FCA's customer. APPX0211-0212.

## B. Background of Related Prior Litigations

Nartron, FCA, and JVIS have already litigated many issues related to the underlying case in prior litigations. In or around 2011, JVIS engaged Nartron to produce PCBAs to integrate into JVIS's instrument panel bezels. APPX0021 (¶7). JVIS grew dissatisfied with Nartron's work and began to pursue other suppliers. APPX0217. In 2012-2013, JVIS terminated the contract with Nartron and engaged FCA to make the PCBAs. APPX0026 (¶36), APPX0027 (¶41), APPX0217. Nartron claimed FCA copied Nartron's work to make FCA's PCBAs. APPX0027 (¶41).

On or around July 9, 2013, JVIS instituted litigation against Nartron in the State of Michigan in the Circuit Court for the County of Macomb, Case No. 13-2742-CK (Hon. Kathryn A. Viviano) alleging that Nartron failed to perform its obligations under the parties' agreement. APPX0026 (¶36). On or around November 11, 2013, Nartron filed a

counter and third-party complaint naming FCA as a third-party defendant, alleging misappropriation of Nartron's trade secrets based on alleged copying of Nartron's PCBAs and other claims. *Id.* The parties agreed to arbitrate rather than litigate the case. APPX0124, APPX0217. On September 22, 2017, JVIS initiated *JVIS-USA, LLC, et al. v Nartron Corporation, et al.*, Case No. 17-3562-CB (Hon. Kathryn A. Viviano) to confirm the award in the arbitration. APPX0124, APPX0217. Neither the Michigan Circuit Court cases nor the arbitration resulted in any finding of misappropriation of any purported Nartron trade secret. APPX0124, APPX0217. Further, the rights to designs and software of the PCBAs were decided in favor of FCA and JVIS. APPX0124, APPX0217. The two prior Michigan Circuit Court cases and intervening arbitration are collectively referred to as the "Prior Litigations." Also relevant, Nartron learned through at least the deposition of FCA's then President, Mr. Masaharu Tomita on December 14, 2015, that FCA had committed no acts in WDTX with respect to FCA's PCBAs. APPX0187. Despite this knowledge, Nartron chose to file the underlying litigation in WDTX as recompense from FCA for losing the JVIS contract to FCA in 2013. APPX0027 (¶41), APPX0177-0178.

In a Case Readiness Status Report in the underlying litigation, FCA, notified the district court that it intended to file motions to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim on the grounds that Nartron's (i) claims were barred by claim and/or issue preclusion by the Prior Litigations and (ii) copyright claim was barred by the statute of limitation. APPX0124. The claims may also be precluded by JVIS's contract with Nartron. *See* APPX0217. FCA contends the rights to the patented designs and copyrighted software at issue in this case were already litigated, arbitrated, and adjudged in favor of FCA and JVIS from July 8, 2013, to November 20, 2017, in the Prior Litigations. APPX0124. FCA has been waiting for resolution of its pending motions to dismiss before undertaking the investigation, time, and expense required for the additional motions.

## C. Procedural Background of this Litigation

Eleven years after learning of FCA's alleged unlawful acts, Nartron filed the underlying action on June 9, 2023, claiming only copyright infringement against FCA. APPX0011-0018. Nartron amended its complaint on July 14, 2023, now alleging infringement of the Patents and copyright infringement. APPX0020-0055. In response, FCA filed motions

8

to dismiss for improper venue pursuant to Fed. R. Civ. 12(b)(3) and 28 U.S.C. § 1400(a) and (b) and lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) on September 14, 2023. APPX0102-0113, APPX0115-0116.

On September 27, 2023, Nartron moved for leave to file a second amended complaint seeking to add Futaba Corporation, a Japanese company with its principal place of business in Japan. APPX0128. Nartron alleged that as a foreign entity, Futaba Corporation could be sued in any federal district court and thereby attempted to establish jurisdiction and venue as to FCA in WDTX. APPX0136. This motion has been pending for eight months.

The district court issued its original Scheduling Order on October 23, 2023, setting the *Markman* hearing for March 14, 2024, and the opening of fact discovery for March 15, 2024. Due to scheduling conflicts and year end holidays, the Parties filed a joint motion to amend the Scheduling Order resulting in the *Markman* hearing being adjourned to April 11, 2024, but on Nartron's insistence, retaining the March 15, 2024, start of fact discovery. APPX0190-0191, APPX0257.

On March 13, 2024, FCA filed a motion to stay all proceedings until the district court decided FCA's pending motions to dismiss for lack of personal jurisdiction and for improper venue. APPX0244-0254. Additionally, consistent with the district court's Exemplary Schedule in its Standing Order Governing Proceedings, OGP 4.4 (Appendix, p.vi), FCA requested that discovery be stayed until one day after the *Markman* hearing. APPX0253. FCA argued that with Nartron's threadbare assertions of personal jurisdiction and venue, it would best not to waste any more of the parties' and Court's resources while the dispositive motions are pending. APPX0245. Meanwhile, Nartron would suffer no prejudice since (i) it waited six years to assert its patent claims and ten years to file its copyright claim and (ii) FCA and Nartron are not current competitors. APPX0245, APPX0257-0258.

After rescheduling the *Markman* hearing to April 10, 2024, just two days before the scheduled hearing, the district court moved the date again, this time to May 22, 2024. APPX0262.

With Nartron having served voluminous discovery on FCA on March 29, 2024, FCA filed a motion for protective order seeking relief from the obligation of responding to discovery until at least 21 days after

the rulings on FCA's motions to dismiss. APPX0263-0268. The district court denied both FCA's motion to stay proceedings (APPX0269) and motion for protective order (APPX0271) on May 13, 2024. On the same day, the district court ordered FCA to respond to the pending discovery within 30 days while postponing the *Markman* hearing a second time] to Monday, July 15th because its "schedule remains busy." APPX0273.

## REASONS WHY THE WRIT SHOULD ISSUE

Generally, three conditions must be satisfied for a writ to issue: (1) the petitioner must demonstrate "a clear and indisputable right" to issuance of the writ; (2) the petitioner must have "no other adequate method" to obtain the desired relief; and (3) the writ must be "appropriate under the circumstances." *In re Apple, Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020); *see also Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 381 (2004). In the context of this case, the first factor is key, as an erroneous decision denying FCA's motions to dismiss cannot be remedied in a future appeal resulting in "irreparable procedural injury." *In re Apple* at 1336. This Court has ruled that district courts must prioritize the resolution of threshold motions, and failure to do so in a timely fashion warrants mandamus relief. *In re Apple,* 52 F.4th 1360,

1361 (Fed. Cir. 2022); *In re Google*, 2015 U.S. App. LEXIS 16544 at *1.

Issuing a writ of mandamus is appropriate here because: i) venue is improper in WDTX; ii) the district court lacks personal jurisdiction over FCA; and iii) the district court's delays in addressing the motions to dismiss. Therefore, FCA respectfully requests that this Court issue a writ compelling the district court to dismiss the matter or, in the alternative, stay the matter pending the motions to dismiss.

## I.    Venue and Jurisdiction Requirements Have Not been Met and Require this Court to Issue a Writ

FCA filed motions to dismiss for improper venue and lack of personal jurisdiction over eight months ago. As explained below, those motions should be granted, and the underlying litigation dismissed.

### A.    Venue is not Proper for Nartron's Patent Claims in the Western District of Texas

Section 1400(b) of Title 28 of the U.S.C. is the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258, 266 (2017) (citation and quotation marks omitted). It provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28

12

U.S.C. § 1400(b). In matters unique to patent law, Federal Circuit law—rather than the law of the regional circuit—applies. *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Whether venue is proper under § 1400(b) is such an issue, so Federal Circuit law governs the substantive questions. *Id.*; *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018).

When the defendant challenges venue in a patent case, "the Plaintiff bears the burden of establishing proper venue." *Id.* at 1013. "Plaintiff may carry its burden by establishing facts that, if taken to be true, establish proper venue." *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-cv-1001-ADA, 2022 U.S. Dist. LEXIS 76297, at *9 (W.D. Tex. Feb. 4, 2022). While a court must accept as true all allegations in the complaint in a Rule 12(b)(3) motion to dismiss, "the Court may look beyond the complaint to evidence submitted by the parties." *Id.* (quoting *Ambraco Inc. v. Bossclip B V*, 570 F.3d 233, 237-38 (5th Cir. 2009).

### 1. FCA does not reside in the Western District of Texas

Section 1400(b) provides a first avenue for establishing venue "where the defendant resides." 28 U.S.C. § 1400(b). "[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland,* 581 U.S. at 262. Here, Nartron has

not alleged FCA resides or is incorporated in Texas. APPX0023 (¶18) (alleging merely "Defendants may be *found* in this district" (emphasis added)). Regardless, FCA is incorporated in Alabama. APPX0115 (¶4). Thus, venue based on residence is improper in this District.

### 2. FCA has not Committed Acts of Infringement in the Western District of Texas

Section 1400(b) provides a second avenue for establishing venue "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A plaintiff may allege acts of infringement to try to establish venue, but a court need not accept them "as true where the defendant offers a contradictory affidavit or evidence." *Intirion Corp. v. Coll. Prods.*, No. 6:22-cv-00459-ADA, 2023 U.S. Dist. LEXIS 63040, at *7 (W.D. Tex. Apr.11, 2023). This is consistent with the trend among circuit courts to accept well-pleaded facts "only to the extent that such facts are uncontroverted by [a] defendant's affidavit." *Pierce v. Shorty Small's*, 137 F.3d 1190, 1192 (10th Cir. 1998); *Deb v. Sirva, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (a court may look to a defendant's contradictory evidence outside the pleadings); *Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012); *Bockman v. First Am. Mktg. Corp.*, 459 F.

App'x 157, 158 n.1 (3d Cir. 2012).

Nartron alleged "[v]enue is proper in the Western District of Texas because Defendants may be found in this district…[and] Defendants have committed acts of patent infringement in this district." APPX0023 (¶18). Specifically, Nartron premised its entire basis for venue (and jurisdiction) on the allegation that "Futaba conducts PCBA prototype design and engineering, test engineering, box assembly, and PCBA assembly from its El Paso [Distribution Center] facility." *Id.* (¶19). However, FCA's Senior Quality Assurance Engineer at the Distribution Center, Ricardo Moreno, attested that the Distribution Center does not conduct any of the listed services. APPX0116 (¶8). Rather, the Distribution Center's activities consist of visually inspecting and transshipping electronics parts other than accused PCBAs. *Id.* (¶9) Further, Moreno declared "Futaba does not make, use, sell, offer to sell, or import into the U.S. the PCBAs in, at, through or out of the Distribution Center." *Id.* (¶7). Nartron deposed Moreno and inspected the facility pursuant to Fed. R. Civ. P. 34 and identified no evidence to controvert his declaration or to establish that FCA committed acts of infringement in WDTX.

FCA's webpage advertising likewise does not support any acts of infringement in WDTX. FCA's webpages have not offered the PCBAs for sale as they have not identified the PCBAs at issue or offered any price therefor. *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-cv-1001-ADA, 2022 U.S. Dist. LEXIS 76297, *21 (W.D. Tex. Feb. 4, 2022) (finding improper venue where "no indication that [ ] advertisements contemplate a price term"); *see, Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) ("contract law traditionally recognizes that mere advertising and promoting of a product may be nothing more than an invitation for offers"). Further Nartron admits that JVIS, a third party in Michigan, contracted with FCA to exclusively make and sell the accused PCBAs for and to JVIS. APPX0021 (¶¶ 7, 9), APPX0025-0027 (¶¶ 30, 33, 35, 41), APPX0030-0031 (¶55a), APPX0033-0034 (¶58).

Nartron did not allege any other acts constituting infringement <u>in WDTX</u>, only insufficient non-specific allegations of, e.g., "making, selling, offering for sale, using, and/or importing in the United States," induc[ing] infringement…by selling the [PCBAs] to United States customers," and "contribut[ing] to infringement…by making, selling, and distributing the [PCBAs] in the United States, where the [PCBAs] constitute a material

part of the claimed invention…." See, e.g., APPX0029 (¶53), APPX0034 (¶63), APPX0036 (¶72).

Even if Nartron had alleged any other act of infringement in WDTX, after over two months of discovery on the subject, Nartron was unable to produce any evidence FCA committed infringing acts in WDTX. Moreover, evidence produced by FCA rebuts all Nartron's conclusory allegations on venue, thus Nartron is unable to satisfy its burden of establishing proper venue.

Moreover, Nartron's indirect patent infringement claims under the '185 Patent and '762 Patent should be dismissed for failure to plausibly allege or show FCA knew of the patents. *See EMA* at *12 ("[t]o state a claim for indirect…infringement, the complaint must allege that the accused infringer has knowledge of the patent"). Nartron alleges FCA has "been aware of the Patents-in-Suit since at least 2017, when the existence of the '185 Patent [and '762 Patent] was mentioned in testimony of the Prior Litigation." APPX0044 (¶98), APPX0052 (¶128). The "Prior Litigation," i.e., JVIS v. Nartron 13-2742-CK (County of Macomb, Michigan) was pending from July 9, 2013, to Nov. 28, 2017. APPX0205-0206 (¶7). FCA could not have been made aware of the '185 and '172

Patents then because they issued Dec. 12, 2017, and March 5, 2019, respectively. *Id*. Because Nartron has not alleged or shown FCA committed acts of patent infringement in this District or even knew of the '185 and '172 Patents, the patent claims against FCA should be dismissed. *EMA* at *22

## B. Venue is not Proper for Nartron's Copyright Claim in the Western District of Texas

Venue for copyright infringement actions is controlled by 28 U.S.C. § 1400(a). It recites that a copyright infringement action "may be filed in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The term "may be found" means where a party is subject to personal jurisdiction. *Time, Inc. v. Manning*, 366 F.2d 690, 697-698 (5th Cir. 1966). *Huffman v. Activision Publ.*, No. 4:17-CV-00815, 2020 U.S. Dist. LEXIS 248904 *14-15 (E.D. Tex. Feb. 25, 2020). "A corporation 'may be found' in a district where personal jurisdiction over a [d]efendant could be maintained. However, there must be specific contacts with that specific district, not merely a specific state." *Tayama v. Riom Corp.*, No. 2:11-CV-167-J, 2012 U.S. Dist. LEXIS 21643 at *4-5 (N.D. Tex. Feb. 21, 2012).

Nartron failed to allege any basis that venue is proper for its copyright claim. Instead, it alleged "[v]enue is proper…under 28 U.S.C. §§ 1391 and 1400(b)…". APPX0023 (¶18). These statutes are for general and patent litigation venue. Even if it alleged a basis for venue, venue for its copyright claim is improper because FCA is not subject to personal jurisdiction in the WDTX as explained below. Therefore, Nartron's copyright claim should be dismissed for failure to allege or show proper venue.

## C.    The Western District of Texas Lacks Personal Jurisdiction

A court must dismiss an action when it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). In analyzing personal jurisdiction, a court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US) LP v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010). For cases brought under the patent laws, the court applies Federal Circuit law to determine personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1016 (Fed. Cir. 2009).

A court engages in two inquiries in determining whether jurisdiction exists over an out-of-state defendant: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). Because the Texas long-arm statute has been interpreted to extend to the limit of due process, the two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich,* 339 F.3d 369, 373 (5th Cir. 2003). "The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum state.'" *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230-1231 (Fed. Cir. 2010) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). From this touchstone of "minimum contacts," courts have recognized two categories of personal jurisdiction, specific and general.

Specific jurisdiction may be asserted where a "corporation's in-state activity is 'continuous and systematic' and *that activity gave rise*

to the episode-in-suit." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (*quoting Int'l Shoe Co. v Wash.*, 326 U.S. 310, 317 (1945). Even "the commission of certain 'single or occasional acts' in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though *not with respect to matters unrelated to the forum connections*." *Id*. (quoting *Int'l Shoe at* 318) (emphasis added). General jurisdiction is when a corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe* at 318. FCA is subject to neither general nor specific jurisdiction.

### 1. FCA is not Subject to General Jurisdiction in the Western District of Texas

General jurisdiction over out-of-state corporations may be found "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear,* at 919 (*quoting Int'l Shoe,* at 317). The "place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) (internal quotation and

correction omitted). "Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts are 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 138-139 (quoting *Goodyear,* 564 U.S. at 919). Those "affiliations with the State" are the place of incorporation and the principal place of business. *Daimler,* at 137, 139.

The general jurisdiction inquiry does not focus solely on the extent of a corporation's contacts within a state. "A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler,* at 140 n.20. As the Fifth Circuit observed in the wake of *Goodyear* and *Daimler*: "[i]t is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs. v. Ritter,* 768 F.3d 429, 432 (5th Cir. 2014).

Nartron alleged only that "Defendants' contacts with the State of Texas are systematic and continuous so as to render Defendants essentially at home in Texas." APPX0023 (¶19),. Nartron admits the

other Defendants, Does 1-10, "are unknown to Nartron at this time" (APPX0022 (¶14)) and therefore their activity cannot form the basis for making that allegation. Moreover, FCA does not have "systematic and continuous" contacts with Texas rendering it "at home" in Texas. FCA is an Alabama corporation (APPX0115 (¶4)), and its principal place of business is in Illinois (APPX0119 ). Thus, its "systematic and continuous contacts" or "home" would be with or in Alabama and/or Illinois, not Texas. *See Daimler,* at 138, 140 n.20. Merely doing business in Texas does not establish general jurisdiction in Texas. *See Daimler,* at 140 n.20. As such, Nartron has not satisfied its burden of establishing general personal jurisdiction over FCA.

### 2. FCA is Not Subject to Specific Jurisdiction in the Western District of Texas

In determining whether specific personal jurisdiction is present, a court must consider "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice." *Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U.S. 84, 92 (1978). However, the "primary concern" for a court to consider is "the burden on the defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). When evaluating that burden, restrictions on

personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Hanson v. Denckla*, 357 U.S. 235, 251 (1958). One State's power to exercise its authority to try cases in its courts is necessarily limited by that same power of other States. *World-Wide Volkswagen*, 444 U.S. at 293. In fact, this interest may deprive a court of jurisdiction when it otherwise seems proper. "[E]ven if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen,* at 294.

Courts apply a three-prong test to determine whether specific jurisdiction exists over a defendant: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Communs,* at 1231. The focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[R]andom," "fortuitous," or "attenuated" contacts do not satisfy the minimum contacts requirement. *Id.* at 475 *(quoting, Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984). Further, the plaintiff has the burden to show minimum contacts exist under the first two prongs. *Elecs. for Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

For a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. *at* 919 (internal quotes omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. *See id.* at 930-931 n.6 ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"). Ultimately, "a defendant's … continuous activity of some sorts within a state...is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.,* 582 U.S. 255, 264 (2017) (internal quotes omitted).

25

To try to establish specific personal jurisdiction here, Nartron alleged the following:

> Futaba [] has a place of business [in] El Paso, Texas. At that location, Futaba (a) regularly transact [sic] and conduct [sic] business within the State of Texas and (b) have [sic] otherwise made or established contacts with the state of Texas sufficient to permit the exercise of personal jurisdiction. In particular, *Futaba conducts PCBA prototype design and engineering, test engineering, box assembly, and PCBA assembly from its El Paso facility*.

APPX0023 (¶19) (emphasis added). The first sentence is true: FCA has a Distribution Center in El Paso, Texas. The second is generic and insufficient to establish jurisdiction in Texas. The third is inaccurate. The El Paso facility is merely a "Distribution Center" that does not conduct any of the listed services. APPX0115-0116 (¶¶ 2, 8). The Distribution Center's activities are limited to visually inspecting and transshipping electronics parts other than accused PCBAs and "Futaba does not make, use, sell, offer to sell, or import into the U.S. the PCBAs in, at, through or out of the Distribution Center" APPX0016 (¶¶ 7-9),. With FCA's limited activities in Texas having no connection to this underlying dispute, specific jurisdiction is not present.

### 3. FCA is Not Subject to Jurisdiction in the Western District of Texas Under a Stream of Commerce Theory

In its opposition to FCA's motion to dismiss for lack of personal jurisdiction, Nartron argued that FCA is subject to specific personal jurisdiction under a stream of commerce theory. However, Nartron pled only a single paragraph to support its assertion that the district court had personal jurisdiction over FCA, and that paragraph makes no mention of a stream of commerce theory. APPX0023. Further, Nartron has failed to allege any facts to support jurisdiction under that theory. For that reason alone, this Court should reject the stream of commerce theory as a basis for jurisdiction.

Beyond that, the requirements for establishing jurisdiction under a stream of commerce theory have long been unresolved. The Court in *Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102 (1987), was split on whether mere placement in the stream of commerce is sufficient to establish jurisdiction, or whether intent that the products reach the forum in question is required, with four justices finding for each requirement. Later, a plurality of the Court in *McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873 (2011) held there was no jurisdiction over the defendant under a stream of commerce theory

27

because the defendant had not purposefully availed himself of the forum state's laws. With no binding precedent, this Circuit has declined to take a position on the requirements of a stream of commerce jurisdictional test because the resolution of the cases before it did not require it. *Celgard, LLC v. SK Innovation Co.* 792 F.3d 1373, 1382 (Fed. Cir. 2015).

In *Celgard*, this Court examined a contract manufacturer's role in the stream of commerce and found jurisdiction lacking. *Id.* Plaintiff argued the district court had personal jurisdiction over defendant under the stream of commerce theory because: 1) "it sells separators [the allegedly infringing product] to other companies, with established distribution channels, that incorporate the infringing separators into CE devices that are sold in North Carolina [the forum state];" 2) plaintiff's tests "show that separators have been found in batteries in CE devices purchased in North Carolina that are consistent" with defendant's separators; and 3) defendant's "biggest customers provide a portion of batteries to Apple and Dell" which sell their products in North Carolina. *Id.* at 1380-1381 (internal quote omitted). This Court found jurisdiction lacking because the "record evidence shows only that [defendant] sells its products to OEMs who then sell completed batteries to [consumer

electronics] manufacturers that resell them in the United States." *Id.*

Additionally, various district courts have issued well-reasoned opinions finding jurisdiction lacking under a stream of commerce theory where component part manufacturers have their goods incorporated into products sold nationally.

> [Plaintiff's] theory rests on the idea [defendant], by selling a component part to a manufacturer like Hauppauge, which in turn sells finished products in major international retail stores, can fairly foresee being hailed into federal court in Texas. The logic of such a theory would subject [defendant] to personal jurisdiction in all 50 states by virtue of Hauppauge's conduct. If the Due Process Clause is to be reduced to nothing, …it will not be by this Court.

*Silicon Labs., Inc. v. Cresta Tech. Corp.*, No. A-14-CA-318-SS, 2014 U.S. Dist. LEXIS 95711, *7-8 (W.D. Tex. July 14, 2014). That court cautioned against the stream of commerce theory becoming a single "interconnected ocean water" and found the assertion of jurisdiction would not be fair. S*ilicon Labs.* at *9.[1]

---

[1] *See also, ASM Assembly Sys. Switz. GmbH v. QTS Eng'g,* No. 15CV714 BEN (RBB), 2016 U.S. Dist. LEXIS 7720, *6 (S.D. Cal. 2016) ("California, has no interest in adjudicating a dispute between two foreign corporations that have no connection to California and a Massachusetts corporation that has no connection to California"); *Target Training Int'l, Ltd. v. Extended Disc Int'l. Oy, Ltd.,* No. 4:11-cv-02531, 2015 U.S. Dist. LEXIS 182823 *29 (S.D. Tex. March 4, 2015) ("Texas has little interest in adjudicating the suit between TTI and EDI, since neither is a Texas company, and there is no evidence that EDI's allegedly infringing

FCA sold the PCBAs at issue to JVIS in Michigan. APPX0116 (¶10). JVIS incorporated those PCBAs into instrument bezels and sold them to a customer which assembled them into vehicles that it sold to dealers. APPX0200. Third-party acts two steps down the supply chain do not create jurisdiction over FCA when it has not directed any act related to the claimed infringement to Texas and when FCA's scarce activity in Texas has nothing to do with this matter.

## II. At a Minimum, Mandamus Is Proper Because the District Court Has Failed To Timely Address the Transfer Motion

At a minimum, mandamus is warranted to compel the district court to address FCA's motions to dismiss. The Court has emphasized that a district court should prioritize and resolve threshold motions before it addresses other substantive issues in a case. *In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) ("once a party files a transfer motion, disposing of that motion should unquestionably take top priority.") (applying Fifth Circuit law); *In re Nintendo Co.*, 544 F. App'x at 941 ("a trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case") (applying Fifth

---

activities occurred in Texas…[and] there is no showing that Texas has any particular interest in this lawsuit.")

Circuit law).

Without issuance of a writ, prejudice can occur as "a lengthy delay in ruling on a request for relief can amount to a denial of the right to have that request meaningfully considered." *In re Google, Inc.*, 2015 U.S. App. LEXIS 16544, at *2. The Court has explained "that lengthy delays in resolving transfer motions can frustrate the intent of 28 U.S.C. § 1404(a) by forcing defendants 'to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket.'" *In re TracFone Wireless, Inc.* 848 Fed. Appx. 899, 900 (Fed. Cir. 2021) (quoting *In re Google, Inc.* at *2). Further, undue delay in addressing threshold motions, "may unnecessarily require the expenditure of judicial resources in both the transferor and transferee courts." *In re Apple Inc.*, 52 F.4th 1360, 1362 (Fed. Cir. 2022).

As such, in *Google*, the Court granted mandamus where a district court had let a transfer motion linger for eight months and where Google "made a compelling case" that the trial court "arbitrarily refused to consider the merits of its transfer motion." *In re Google* at *2. Similarly, the *TracFone* Court concluded "that a trial court's failure to act on a fully briefed transfer motion that had been pending for approximately eight

months while pressing forward with discovery and claim construction issues amounted to an arbitrary refusal to consider the merits of the transfer motion." *In re TracFone* at 900. Likewise, the Court found "the lengthy delay and upcoming Markman hearing" necessitated granting mandamus such that "the district court must stay all proceedings concerning the substantive issues of the case and all discovery until such time that it has issued a ruling on the motion capable of providing meaningful appellate review of the reasons for its decision." *In re SK Hynix, Inc.,* 835 Fed. Appx. 600, 601 (Fed. Cir. 2021).

The Court's precedent is clear and compels granting mandamus. FCA filed its motions to dismiss on September 14, 2023. With the motions fully briefed and no indication of a hearing or decision date, on March 13, 2024, FCA filed its motion to stay proceedings until the motions to dismiss were decided or, at a minimum, to stay discovery until one day after the April 11, 2024, *Markman* hearing. FCA argued the adjournment of the start of fact discovery would be consistent with the court's Exemplary Schedule in its Standing Order Governing Proceedings, OGP 4.4 which starts fact discovery after the *Markman* hearing. APPX0216. Moreover, any prejudice to Nartron was negligible in light of its ten-year

delay in filing the underlying action and the fact the parties were no longer competitors. *Id*. Since then, the district court has, *sua sponte*, postponed the *Markman* hearing twice, first to May 22, 2024, and second to July 15, 2024. Meanwhile, Nartron served voluminous discovery on March 29, 2024. Seeking relief from the obligation to respond to the discovery, FCA filed a motion for protective order on April 18, 2024. APPX0234. The district court denied both FCA's motion to stay proceedings (APPX0240) and motion for protective order (APPX0242) on May 13, 2024, while also ordering FCA to respond to the pending discovery within 30 days. In doing so, the district court explained that its, "schedule remains very busy." APPX0244.

FCA's motions to dismiss have been pending for over eight months during which time FCA has been burdened with numerous discovery issues and requests, and has been marched through claim construction. With cursory orders, the district court granted Nartron's request to compel additional discovery on the motions to dismiss, denied FCA's request to compel claim construction discovery, granted Nartron's request to compel merits-based fact discovery, and now denied FCA's motions for relief from the expedited pace of the district court's

scheduling order. The scheduling order even forced the Parties to serve their respective Final Infringement and Invalidity Contentions despite not having a claim construction ruling. APPX0195. The district court's extreme delay and its "continued refusal" to heed the instruction to resolve threshold motions to dismiss before proceeding to other substantive aspects of the case warrant the sort of "supervisory" intervention that justifies the writ of mandamus. *See In re Nintendo Co.*, 544 F. App'x at 936; *In re TracFone* at 900. Thus, mandamus is warranted, and the Court should, at a minimum, order the district court to stay discovery and all proceedings concerning the substantive issues of the case until it has ruled on FCA's motions to dismiss. *In re SK Hynix* at 601.

## CONCLUSION

For the foregoing reasons, the Court should issue a writ of mandamus requiring the district court to grant FCA's motion to dismiss. Alternatively, the Court should issue a writ of mandamus staying this case and requiring the district court to rule on FCA's motions within 30 days.

34

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and the Rules of this Court, because it contains 6,967 words (as determined by the Microsoft Word word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word word-processing system in 14-point Century Schoolbook font.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### ENTRY OF APPEARANCE

**Case Number:**

**Short Case Caption:** Futaba Corporation of America v. UUSI, LLC d/b/a Nartron

| **Instructions:** Refer to Fed. Cir. R. 47.3 for requirements governing representation and appearance in this court.  Counsel must immediately file an amended Entry of Appearance if contact information changes and update information through PACER's <u>Manage My Account</u>.  Non-admitted government counsel should enter N/A in lieu of an admission date.  Use the second page to add additional counsel. |
|---|

| **Party Information.** List all parties, intervenors, amicus curiae, or movants represented by below counsel; "et al." is not permitted. |
|---|

| Futaba Corporation of America | |
|---|---|
| **Principal Counsel:** George S. Fish | Admission Date: 5/22/2024 |
| Firm/Agency/Org.: Young Basile Hanlon & MacFarlane, P.C. | |
| Address: 3001 W. Big Beaver Rd., Ste. 624, Troy, MI 48084 | |
| Phone: (248) 649-3333 | Email: fish@youngbasile.com |
| **Other Counsel:** John Demarco | Admission Date: 2/20/1997 |
| Firm/Agency/Org.: Young Basile Hanlon & MacFarlane, P.C. | |
| Address: 700 Milam St., Ste. 1300, Houston, TX 77002 | |
| Phone: (832) 871-5000 | Email: demarco@youngbasile.com |

I certify under penalty of perjury that (1) the submitted information is true and accurate and (2) I am authorized to enter an appearance by all other listed counsel.

Date: 5/30/24

Signature: /s/ George S. Fish

Name: George S. Fish

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number**

**Short Case Caption** Futaba Corporation of America v. UUSI, LLC d/b/a Nartron

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  05/30/2024

by   ☐   U.S. Mail   ☐   Hand Delivery   ☑ Email   ☐ Facsimile
☐   Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Lawrence M. Hadley | 10250 Constellation Blvd., 19th Floor, Los Angeles, CA 90067 lhadley@glaserweil.com |
| Lara A. Petersen | 10250 Constellation Blvd., 19th Floor, Los Angeles, CA 90067 lpetersen@glaserweil.com |
| Jason C. Linger | 10250 Constellation Blvd., 19th Floor, Los Angeles, CA 90067 jlinger@glaserweil.com |
| Mark D. Siegmund | 400 Austin Ave., 9th Floor, Waco, TX 76701 msiegmund@cjsjlaw.com |
| Craig D. Cherry | 400 Austin Ave., 9th Floor, Waco, TX 76701 ccherry@cjsjlaw.com |

☐   Additional pages attached.

Date: 05/30/2024

Signature:   /s/ George S. Fish

Name:   George S. Fish